IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANTHONY COLLINS** and **JAMES POWELL**, individually and as Class Representatives, <br><br> Plaintiffs, <br><br> v. <br><br> **CHRISTOPHER AUFFENBERG,** <br><br> Defendant. | Cause No. 24-1120 |

## CLASS ACTION COMPLAINT

COME NOW, Plaintiffs, ANTHONY COLLINS and JAMES POWELL, on their own behalf and on behalf of all others similarly situated, by and through counsel, and hereby file this Class Action Complaint against CHRISTOPHER AUFFENBERG, and state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as the parties are minimally diverse, the class numbers over 40 individuals, and the minimum amount in controversy exceeds $5,000,000.00 considering the injury to the class and available statutory and punitive damages.

2. Venue is proper as at least part of Defendant's wrongful conduct and injury sustained by class members occurred within the geographic boundaries of this district.

3. At all relevant times, Defendant purposefully availed himself of the forum state and directed his actions to conduct business in the forum state by directly targeting and soliciting customers from the forum state and maintaining businesses within the forum state.

4. That through specific marketing efforts, Defendant directly targeted and solicited customers from Illinois in an ongoing and continuous effort and benefitted from substantial business activity involving customers from the State of Illinois.

5. As an example, Defendant marketed himself as a "family of dealerships" with "new and used vehicles in Missouri and Illinois" and "6 locations to serve you." Further, Defendant's dealerships located in Missouri specifically held themselves out to members of the general public as serving specific municipalities located in Illinois.

6. The alleged scheme to defraud and conceal the fraud from Plaintiffs, and those similarly situated, occurred by design and operation in Illinois.

## PARTIES

7. Plaintiff Anthony Collins is and at all relevant times was a resident of the Commonwealth of Kentucky.

8. Plaintiff James Powell is and at all relevant times was a resident of the State of Illinois.

9. Defendant Chris Auffenberg is and at all relevant times was a resident of the State of Missouri, and he is a manager/director/officer of Southern Illinois Autos, Inc., CGA Motors, Inc., Cape County Autopark I, Inc., Gerard Investments, LLC, Chris Auffenberg Ford, Inc., and St. Francois County Motors, Inc (collectively, "the dealerships").

10. Southern Illinois Autos, Inc. is and at all relevant times was a Missouri corporation registered to conduct business in Illinois as Auffenberg Chrysler of Herrin and/or Chris Auffenberg Chrysler of Herrin.

11. CGA Motors, Inc. is and at all relevant times was a Missouri corporation registered to conduct business in Illinois as Auffenberg of Carbondale and/or Chris Auffenberg of Carbondale.

12. Cape County Autopark I, Inc. is and at all relevant times was a Missouri corporation registered to conduct business in Missouri as Auffenberg KIA of Cape Girardeau and/or Chris Auffenberg KIA and/or Chris Auffenberg KIA of Cape Girardeau.

13. Gerard Investments, LLC is and at all relevant times was a Missouri limited liability company registered to conduct business in Missouri doing business as Auffenberg Hyundai of Cape Girardeau and/or Chris Auffenberg Hyundai.

14. Chris Auffenberg Ford, Inc. is and at all relevant times was a Missouri corporation registered to conduct business in Missouri as Chris Auffenberg Ford and/or Chris Auffenberg Ford-Lincoln and/or Chris Auffenberg Lincoln.

15. St. Francois County Motors, Inc. is and at all relevant times was a Missouri corporation registered to conduct business in Missouri as Chris Auffenberg Chevrolet-Buick-GMC.

16. At all relevant times, the dealerships operated as a "family of dealerships" under the direction of Defendant Christopher Auffenberg and held itself out to the public, including consumers in Missouri and Illinois, as a single entity with six (6) locations specifically serving Missouri and Illinois.

17. The dealerships were managed and/or directed by Defendant Chris Auffenberg under an alter ego and/or fictitious name "Chris Auffenberg" and/or "Chris Auffenberg Family of Dealerships" and/or "Auffenberg Automotive Group."

18. At all relevant times, Defendant published a website specifically targeting consumers in Missouri and Illinois, maintained and actively promoted a brand labeled as a "family of dealerships" for purposes of availing himself to the consumer public in the purchase or sale of new and used motor vehicles. Each of the dealerships promoted the website on their own websites and directed consumers to the website identifying the dealership as a family of dealerships located in Illinois and Missouri.

19. At all relevant times, Defendant Chris Auffenberg directed and/or oversaw the operations of each dealership through a single corporate address with common corporate officers, and the dealerships were overseen by management common to all Defendant under the direction of Defendant Chris Auffenberg acting as a parent under an alter ego and/or fictitious name "Chris Auffenberg" and/or "Chris Auffenberg Family of Dealerships" and/or "Auffenberg Automotive Group."

20. At all relevant times, Defendant directed the activities of the dealerships, including engaging in the wrongful conduct resulting in Plaintiffs' losses and the losses of those similarly situated.

21. Defendant, by and through the corporate entities he controlled, employed individuals to solicit and/or sell vehicles made available for purchase to the consumer pubic.

22. Defendant employed more than 40 different individuals engaged directly in the sale of used vehicles between 2014 and the present.

23. Employees agreed to solicit car sales on behalf of Defendant in exchange for compensation consisting of, in whole or in part, commissions on the sale of used cars.

24. Commissions on the sale of used cars were to be calculated in conformance with the representations and written policies of the dealerships, including a written pay plan.

25. In practice, and without the consent of the employee who earned the commission, Defendant skimmed excess amounts off the sales commission due and owing to the employee in violation of the representations and written policies of the dealerships.

26. Using false pretenses and employing a device to conceal the amounts wrongly retained from the commissions owed to employees, Defendant fraudulently concealed and/or otherwise prevented the discovery of the diminution of commissions owed to employees.

27. Devices used to conceal excess amounts withheld include but are not necessarily limited to the practice of disseminating false itemized sales statements reflecting an inflated vehicle cost and/or including excess amounts of pack fees in the vehicle cost disclosed to the salesperson which had the dual purpose and effect of diminishing the value of commissions due to employees and concealing the true commission owed to the employee.

28. Through false representations made to employees, Defendant concealed the amounts wrongly retained from the commissions owed to employees.

29. Defendant retained excess amounts of used car sales, including but not necessarily limited to excess amounts allocated to "pack fees" retained by the dealership for the benefit of Defendant.

30. Upon information and belief, Defendant retained control of the excess amounts skimmed off used car sales before calculating the commissions due and owing to employees.

31. Upon information and belief, the practice of underpaying commissions in violation of the representations and written policies of Defendant was in existence and uniformly applied at all six (6) locations owned and/or operated by Defendant and against each and every employee of the dealerships engaged or maintaining an interest in the sale of used vehicles.

32. Upon information and belief, the act of underpaying commissions due and owing to employees at each of the dealerships was personally directed by Defendant Chris Auffenberg.

**Plaintiff Anthony Collins**

33. From at least February, 2023, until October, 2023, Plaintiff Collins was employed by Defendant to serve as a general manager of the dealership in Herrin, Illinois, Southern Illinois Autos, Inc. d/b/a Chris Auffenberg of Herrin, and engage customers in the purchase of vehicles from Defendant.

34. Plaintiff Collins was paid in whole or in part in commissions based on the sales he made on behalf of Defendant. Plaintiff was further compensated in commission based on the profit on the sale of used vehicles by the dealership's sales employees.

35. Plaintiff Collins reasonably relied on the representations and affirmations of Defendant as to the methodology used to calculate the commissions payable on the sales.

36. In furtherance of his employment relationship with Defendant, Plaintiff Collins made sales of vehicles to the consumer public and facilitated the sale of vehicles by dealership employees.

37. Under false pretenses, Defendant artificially reduced the value of commissions due and owing to Plaintiff by falsely stating the profit on the sale of used vehicles.

38. Defendant benefited financially from the underpayment to Plaintiff.

### Plaintiff James Powell

39. From at least May, 2023, until October, 2023, Plaintiff Powell was employed by Defendant to serve as a salesperson of the dealership in Herrin, Illinois, Southern Illinois Autos, Inc. d/b/a Chris Auffenberg of Herrin, and engage customers in the purchase of vehicles from Defendant.

40. Plaintiff Powell was paid in whole or in part in commissions based on the sales he made on behalf of Defendant.

41. Plaintiff Powell reasonably relied on the representations and affirmations of Defendant as to the methodology used to calculate the commissions payable on the sales.

42. In furtherance of his employment relationship with Defendant, Plaintiff Powell made sales of vehicles to the consumer public and facilitated the sale of vehicles by dealership employees.

43. Under false pretenses, Defendant artificially reduced the value of commissions due and owing to Plaintiff by falsely stating the profit on the sale of used vehicles.

44. Defendant benefited financially from the underpayment to Plaintiff.

45. Defendant's unjustifiable conduct evidences gross negligence and/or a reckless disregard to the rights of Plaintiffs, and those similarly situated.

## CLASS ALLEGATIONS

46. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves individually and on behalf of the class, including all individuals who were owed compensation for the purchase or sale of used vehicles but were underpaid the value of that compensation during the relevant time frame. Excluded from the Class are the Defendant, any person, firm, trust, corporation or other entity affiliated with Defendant, and members of the federal judiciary.

47. That at all relevant times, all class members were employees of Defendant paid in whole or in part on sales commissions.

48. That at all relevant times, the sales commissions paid by Defendant to all class members were diminished due to the conduct of Defendant pursuant to an agreement to defraud Plaintiffs, and those similarly situated.

49. That at all relevant times, Defendant retained wages and/or sales commissions due and owed to the class members for sales made in the course and scope of employment.

50. Plaintiff brings this claim on behalf of a class, consisting of all current or former employees of Defendant who were paid less than the full amount of commission owed on any used vehicle sale made at Defendant's dealerships between May 1, 2014, and the present.

51. Upon information and belief, the class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are at least more than 40 members of the class, if not in excess of 100 current or former employees whose commissions were undervalued and underpaid during the relevant time period.

52. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include whether:

   a. class members were paid less than the full value of commissions due and owing for used car sales;
   b. Defendant engaged in a scheme to employ an artifice or device to undervalue and/or underpay commissions to employees for used car sales;
   c. Defendant tortiously interfered with the contractual right to compensation on the sale of used car sales; and
   d. Defendant misrepresented, concealed, omitted, and/or suppressed the true value of commission due and owing to class members.

53. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs' claims are typical of the claims of class members. Named Plaintiffs suffered similar damages as those suffered by other class members as a result of Defendant's underpayment of wages and/or commissions.

54. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action. Plaintiffs and counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and Class counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

55. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because it is not economically feasible to bring individual actions.

56. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

## COUNT I
### Missouri Sales Commission Act

57. At all relevant times, the Missouri Sales Commission statute, 407.911 to 407-915 was in force and effect.

58. At all relevant times, each of the dealerships were registered with the State of Missouri as entities organized under the laws of Missouri, and Defendant was subject to the Missouri Sales Commission statutes.

59. Defendant, by and through the corporate entities he controlled, was a principal under the 407.913 who provided vehicles for sale to members of the general public.

60. Plaintiffs, and those similarly situated, were sales representatives employed by Defendant to solicit purchases and/or orders of vehicles made available by Defendant and who were compensated, in whole or in part, through commissions for sales made on behalf of and pursuant to agreement with Defendant.

61. Defendant failed to timely pay Plaintiffs, and those similarly situated, commissions due and owed for sales made on behalf of and pursuant to agreement with Defendant.

62. In violation of the agreement between Defendant and Plaintiffs, and those similarly situated, Defendant diminished the value of commissions owed and paid to Plaintiffs,

and those similarly situated, and retained all or part of commissions rightfully owed to Plaintiffs, and those similarly situated.

63. Defendant benefited from its underpayment of commissions due and owed to Plaintiffs, and those similarly situated.

64. Defendant's violation of the Missouri Sales Commission statute entitles Plaintiffs, and those similarly situated, to a non-exclusive award of the actual damages sustained by the sales representatives and an additional amount as if the sales representative were still earning commissions calculated on an annualized *pro rata* basis from the date of termination to the date of payment.

65. Defendant's violation of the Missouri Sales Commission statute entitles Plaintiffs, and those similarly situated, to reasonable attorney's fees and costs.

## COUNT II
### Illinois Wage Payment and Collection Act

66. At all relevant times, the Illinois Wage and Payment Collection Act, 820 ILCS 115, et seq. was in force and effect.

67. Defendant was an employer located in the State of Illinois as defined by the Illinois Wage and Payment Collection Act, 820 ILCS 115/2, in that Defendant made wage payments in Illinois directly to Plaintiffs, and those similarly situated, for work undertaken pursuant to an agreement between Defendant and Plaintiffs, and those similarly situated.

68. Defendant's employment of individuals in the State of Illinois for the purpose of selling used vehicles in exchange for a portion of the sale subjects Defendant to the Illinois Wage and Payment Act.

69. That at all relevant times, Plaintiffs, and those similarly situated, maintained an employment agreement with Defendant that required payment of compensation, including wages and/or commissions, for work performed by Plaintiffs, and those similarly situated.

70. In violation of the agreement between Defendant and Plaintiffs, and those similarly situated, Defendant diminished the value of commissions owed and paid to Plaintiffs, and those similarly situated, and retained all or part of commissions rightfully owed to Plaintiffs, and those similarly situated.

71. Defendant benefited from the underpayment of wages and/or commissions in violation of the employment agreement between Defendant and Plaintiffs, and those similarly situated.

72. Defendant's violation of the Illinois Wage and Payment Act entitles Plaintiffs, and those similarly situated, to receive the amount of any underpayment of wages and/or commissions and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid.

73. Defendant's violation of the Illinois Wage and Payment Collection Act further entitles Plaintiffs, and those similarly situated, to the recovery of costs and all reasonable attorney's fees.

## COUNT III
### Tortious Interference

74. At all relevant times, Plaintiffs, and those similarly situated, maintained a contract with Defendant regarding the sale of used vehicles in exchange for a commission on the sale.

75. Defendant Chris Auffenberg, acting with knowledge of the contract between Plaintiffs, and those similarly situated, employed improper means, including but not limited to

the use of false pretense and/or a deceptive device, designed to induce a breach of the contractual agreement with Plaintiffs, and those similarly situated.

76. Defendant's conduct inducing a breach of the contractual agreement was performed without justification or excuse for the benefit of his personal interest over the interest of the dealerships.

77. As a direct and proximate result of Defendant's actions, Plaintiffs and those similarly situated were injured through the underpayment of commissions, emotional distress, and the imposition of costs, including attorney's fees, associated with obtaining relief from Defendant's wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Class, pray for the following relief:

a. An order that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);
b. An order requiring Defendant to pay Plaintiffs damages, including statutory damages under the various state statutes pled above;
c. An award of punitive damages;
d. An award of attorney fees and expenses;
e. Pre- and post-judgment interest;
f. Any further relief deemed just, proper, and available under the circumstances.

Respectfully Submitted,

WEILMUENSTER, KECK & BROWN, P.C.

By: _____
Nathaniel O. Brown
IL No.: 6302492

Attorneys for Plaintiffs
3201 West Main Street
Belleville, IL 62226

Phone: 618-257-2222
Fax: 618-257-2030
nate@wkbpc.com