# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY COLLINS and JAMES POWELL, individually and as Class Representatives, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER AUFFENBERG, <br><br> Defendant. | Case No. 24-cv-01120-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Before the Court is Defendant Christopher Auffenberg's Motion to Compel Arbitration and Stay Case. (Doc. 34). Having been fully informed of the issues presented, the Motion is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Anthony Collins and James Powell filed their Complaint on behalf of themselves and as Class Representatives on April 4, 2024, in this Court. (Doc. 1). Collins and Powell brought three claims related to Auffenberg's alleged failure to pay Plaintiffs and the members of the purported class the commissions they were owed as employees at automobile dealerships managed, directed, and operated by Auffenberg. (*See id.*). Auffenberg initially filed a Motion to Dismiss and/or Quash Service for Insufficiency of Service of Process Under Federal Rule of Civil Procedure 12(b)(5) on June 10, 2024. (Doc. 13). Auffenberg appeared before this Court on September 4, 2024, and withdrew his Motion on the same day. (Doc. 20). Auffenberg

filed his Answer to Plaintiffs' Complaint on September 13, 2024. (Doc. 21). Auffenberg filed a Jury Demand on September 24, 2024. (Docs. 26, 28). The parties appeared for a Telephonic Scheduling Conference before this Court on November 7, 2024. (Doc. 31). The same day, this Court accepted the Joint Report and Proposed Scheduling and Discovery Order proposed by the parties. (Doc. 32). On November 22, 2024, Auffenberg filed a Motion for Leave to File his First Amended Answer, the instant Motion to Compel Arbitration and Stay Case, and a Memorandum in Support of his Motion to Compel Arbitration and Stay Case. (Docs. 33, 34, 35). Collins and Powell filed their Response in Opposition to Auffenberg's Motion to Compel Arbitration and Stay Case on December 9, 2024. (Doc. 37). Auffenberg filed his Reply to Collins' and Powell's Response on December 16, 2024. (Doc. 38).

## APPLICABLE LAW AND LEGAL STANDARDS

The Federal Arbitration Act "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). Section 2 of the FAA provides that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotations omitted). The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so

to submit." *AT&T Techs. v. Commc's Workers of Am.,* 475 U.S. 643, 648 (1986). It is important to note that a court, in deciding whether the parties have agreed to arbitrate, is not to rule on the potential merits of the underlying claims. *Id.*

Under the FAA, "arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). As the party seeking arbitration, Defendant bears the burden of proving that Plaintiffs "agreed to arbitrate the claim[s] asserted here." *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). To decide this question, courts apply an evidentiary standard similar to the one that applies at summary judgment, meaning that "if the party seeking arbitration offers sufficient evidence to allow a factfinder to conclude that the parties agreed to arbitrate, the party opposing arbitration must identify facts showing a genuine dispute as to the existence of the agreement." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Once an enforceable arbitration contract is shown to exist, "questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer*, 863 F.3d at 752 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The FAA allows one party to an arbitration agreement to ask the court to put the litigation on hold and force the other party to arbitrate the disputes. 9 U.S.C. § 4. Indeed, Sections 3 and 4 of the FAA describe procedures through which federal courts implement arbitration agreements, stating that courts "shall" stay proceedings and order arbitration upon confirming the existence of an enforceable arbitration

agreement that covers the dispute at hand. *Id.* at §§ 3, 4. As such, a party moving for arbitration also implicitly seeks a stay of judicial proceedings.

## ANALYSIS

To begin, Collins and Powell clearly oppose arbitration in the instant action, having filed their case in federal court and opposing Auffenberg's Motion to Compel. Further, no Party has disputed that, if the agreement is found enforceable, that Collins' and Powell's claims for violations of the Missouri Sales Commission Act, Illinois Wage Payment and Collections Act, and tortious interference with contract are not within the arbitration agreement. Thus, key to this Court's analysis of Auffenberg's Motion to Compel Arbitration and Stay Case is determining whether there is a valid agreement to arbitrate that exists between Collins and Auffenberg and Powell and Auffenberg, respectively. Before determining whether there is a valid and enforceable agreement, however, this Court must first address Auffenberg's ability to enforce the arbitration provision and whether he has waived that right. Because both Collins and Powell signed identical forms, they will be discussed together. (*See* Doc. 34, Exs. A, B).

### I.     Waiver of Right to Arbitrate

An agreement to arbitrate, like other contractual rights, is waivable. *Al-Nahhas v. 777 Partners LLC,* No. 23-2723, 2025 WL 546908, at *3 (7th Cir. Feb. 19, 2025) (citing *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020)). In the arbitration context, waiver encompasses "both intentional relinquishments and implicit abandonments of the right to arbitrate," and can be express or implied through action. *Id.* at *5. "When we evaluate whether waiver can

be inferred, we consider whether 'a party acted inconsistently with the right to arbitrate.'" *Id.* (quoting *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011)). This analysis requires the court to evaluate the diligence or lack thereof of the party seeking arbitration, or, put another way, to ask whether "that party [did] all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Id.* (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). A court must analyze such factors as "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* (quoting *Kawasaki*, 660 F.3d at 994).

Plaintiffs argue that Auffenberg has waived his right to enforce the arbitration agreement by "meaningfully participating in the litigation" prior to seeking to compel arbitration. (Doc. 37, p. 3). In support of their argument, Plaintiffs point to Auffenberg's failure to pursue arbitration from the outset of the litigation and the affirmative actions that Auffenberg has taken in federal court following Plaintiffs having filed this action on April 17, 2024, but prior to moving to compel arbitration: Auffenberg's entry of his appearance before this Court and filing a Motion to Dismiss and/or Quash Service for Insufficiency of Service of Process on June 10, 2024 (Docs. 12, 13); appearing before the Court for a hearing on the Motion to Dismiss and subsequent withdrawal of that Motion on September 4, 2024 (Doc. 20); filing his Answer on September 13, 2024 (Doc. 21); filing a Demand for a Trial by Jury on September 24, 2024 (Doc. 27); appearing before the Court for a Rule 16 Scheduling Conference on November 7, 2024 (Doc. 31); consenting to a Joint Report and Proposed

Scheduling and Discovery Order on November 7, 2024 (Doc. 32); and serving discovery on Plaintiffs on November 25, 2024 (Doc. 37, p. 4). Auffenberg argues, in response, that he has participated in the case thus far only to the extent he has been required to do so by the Court and, subsequently, to assert his right to arbitrate. (Doc. 38, p. 2). Auffenberg states that his first objection to participating in the litigation was made during the discovery process while gathering information to make his Rule 26 Initial Disclosures. (*Id.*). He further states that the employment applications containing the arbitration provisions in question were not part of his personal records, but were rather business records of Southern Illinois Autos, Inc. (*Id.*; *see* Doc. 34, Ex. 1).

In *Al-Nahhas*, the Seventh Circuit held that the defendants waived their right to compel arbitration through their conduct during litigation. 2025 WL 546908, at *6. The court reasoned that fourteen months had elapsed between the time the complaint was filed until the defendants moved to compel arbitration, and that the Defendants had engaged in substantial, inexcusable delay. *Id.* Furthermore, the plaintiff had attached the arbitration provision in question to his complaint, and, therefore, could not argue that they were unaware of their ability to compel arbitration. *Id.* Defendants had produced thousands of documents in the discovery process, assured the court that they would comply with the court's discovery deadlines, sought multiple extensions of those deadlines, and twice provided status updates as requested by the court. *Id.* Defendants argued that their counsel's poor performance resulted in the delayed filing of their motion to compel arbitration, but ultimately,

the court stated that a party was bound by action of their counsel nonetheless and held that Defendants had waived their arbitration rights. *Id.*

An analysis of *Kashkeesh v. Microsoft Corp.*, 679 F. Supp. 3d 731, 737 (N.D. Ill. 2023), though decided prior to *Al-Nahhas*, is also instructive in the determination of whether Auffenberg has waived his right to arbitrate. In *Kashkeesh*, the court found that while defendant had demonstrated a lack of diligence through a lengthy, twenty-month delay in moving to compel arbitration, there was no evidence that the defendant knew about the possibility of arbitration earlier and had taken steps to avoid litigation on the merits. *Id.* at 739. Defendant had initially removed the matter to federal court in June 2021, which, according to the court, "manifest[ed] an intention to resolve the dispute in federal court." *Id.* at 738 (citing *Cabinetree of Wis.*, 50 F.3d at 390). It had also, in at least a limited manner, participated in the litigation by filing a motion to dismiss and participating in some discovery related to that motion. *Id.* at 738. It was not until nineteen months into the litigation that defendant discovered the relevant arbitration agreements, at which point it promptly filed a motion to compel arbitration. *Id.* The court found that the defendant, a sophisticated corporation, could have done more to discover the arbitration agreements, particularly given its knowledge that plaintiffs' employment was governed by contractual provisions and its failure to properly communicate with plaintiffs and third parties at the outset of the case. *Id.* The court, however, found that defendant was, at most, negligent in failing to identify whether plaintiffs' claims could be arbitrated earlier, and the court reasoned that negligence and oversight is not enough to find waiver. *Id.* at 739 n.6. Further, the court noted that its participation of

responding to plaintiff's motion to remand, moving to dismiss for lack of personal jurisdiction, and responding to discovery requests, did not seek a determination of merits by the court. *Id.* at 738. Thus, the court found that defendant had not waived its right to arbitrate. *Id.* at 739.

It is clear from the facts and procedural history of this case that Auffenberg has not intentionally or implicitly waived his right to arbitrate in this matter. Unlike the *Al-Nahhas* and *Kashkeesh* cases, both of which featured defendants who waited well over one year to compel arbitration, Auffenberg filed this Motion to Compel Arbitration on November 22, 2024, six months from the date on which he was served. (*See* Doc. 11). Further, the evidence supports that Auffenberg was not personally in possession of the employment application records for Collins and Powell, but rather these documents were kept in the course of the business he manages, directs, and operates, and thus the delay was neither substantial nor inexcusable. (*See* Doc. 34, Ex. 1). Upon discovering these records, Auffenberg acted promptly to compel arbitration. In addition, Auffenberg's participation in the litigation thus far has not sought a determination of the case on its merits. Auffenberg initially sought to challenge Plaintiffs' service of process and appeared before this Court to argue that Motion; and upon withdrawal of that Motion, he acted promptly to file an Answer to comply with the Federal Rules of Civil Procedure and avoid a default. While Auffenbterg did request a jury trial, participate in a scheduling conference with this Court, and participated in the outset of the discovery process, the Rule 26 disclosures he made to Collins and Powell (which included an objection to participating in discovery due to the arbitration agreements) pale in comparison to the thousands of

documents produced by the *Al-Nahhas* defendants. Based on this record, this Court does not find that Auffenberg waived his right to arbitrate.

## II.   Enforceability under the FAA

Having established that Auffenberg has not waived his right to compel arbitration, the Court must consider whether there were, in fact, agreements between Collins and Auffenberg and Powell and Auffenberg, respectively, to arbitrate.

### A. Application of Illinois Law

In determining whether a valid arbitration agreement exists between parties, federal courts apply the state law principles of contract formation. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. 3d 705, 711 (7th Cir. 2019). An enforceable contract under Illinois law requires an offer, acceptance, consideration, and mutual assent. *Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011).

Auffenberg argues that Collins and Powell, respectively, signed employment applications in which they made certain promises (including to arbitrate certain disputes) if they were hired and became employees of Southern Illinois Autos, Inc. (Doc. 35, pp. 2–3). In support, Auffenberg attached to his Motion two Exhibits which he alleges are the signed applications for employment submitted by Collins and Powell which contains the provisions which would bind them to arbitrate their disputes in this matter. (*See* Doc. 34, Exs. A, B).

In order for the employment applications, which contain the arbitration provision in question, to be enforceable, there must be sufficient consideration between the parties. *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624

(2005). Courts have found sufficient consideration where an employer promises to consider an applicant for employment in exchange for the applicant's return promise to abide by company rules upon employment, including the arbitration of certain claims. *See Chatman v. Pizza Hut*, Inc., 2013 WL 2285804, at *4 (N.D. Ill. May 23, 2013) (interpreting Illinois law); *Johnson v. Orkin, LLC*, 2013 WL 828506, at *12 (N.D. Ill. Mar. 6, 2013) (interpreting Illinois law). Additionally, continued employment is sufficient consideration for the enforcement of an arbitration agreement. *Id.* (citing *Melena v. Anheuser–Busch, Inc.*, 847 N.E.2d 99 (Ill. 2006)). Further, a mutual promise to arbitrate claims is sufficient consideration to support an arbitration agreement. *Id.* (citing *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985); *Gen. Motors Acceptance Corp. v. Johnson*, 822 N.E.2d 30 (Ill. App. Ct. 2004)).

Here, the employment applications signed by Collins and Powell, respectively, contain promises to abide by rules and regulations of the Company in exchange for consideration of employment. (*See* Doc. 34, Exs. A, B). Each agreement also contains a provision by which the applicant agrees that claims, disputes, or controversies concerning the employment relationship between the parties shall be submitted to and determined exclusively by binding arbitration under the FAA. (*See id.*). This provision further states that by agreeing to the binding arbitration provision, both the applicant and the Company give up their right to a trial by jury. (*See id.*). Thus, under Illinois law, there exists a binding agreement to arbitrate certain claims between Collins and Auffenberg and between Powell and Auffenberg. By signing their

applications for employment with Defendant, Collins and Powell both agreed to arbitrate certain claims.

### B. Applicability of the Illinois Workplace Transparency Act

Plaintiffs next argue that the arbitration provision in question violates the Illinois Workplace Transparency Act, 820 ILL. COMP. STAT. 96/1-25 ("IWTA"), and is therefore void. (Doc. 37, p. 7). In the alternative, Plaintiffs argue that even if the offending language in the arbitration provision was severed from the rest of the agreement (which, Plaintiffs argue, is impossible due to Defendant's choice to draft such a broad arbitration provision), there is no language remaining that would compel the Parties to arbitrate their dispute. (*Id.*, p. 12).

The IWTA aims to "ensure that all parties to a contract for the performance of services understand and agree to the mutual promises and consideration therein, and to protect the interest of this State in ensuring all workplaces are free of unlawful discrimination and harassment." 820 ILL. COMP. STAT. 96/1-5. To achieve this, the IWTA, in relevant part, places a limit on agreements that require employees to arbitrate claims related to an unlawful employment practice (including discrimination, retaliation, and harassment) to the extent that they deny an employee a substantive or procedural right or remedy. *Id.* at 96/1-25.

The Court does not find that an analysis of whether, or to what extent, the IWTA applies to this arbitration agreement is necessary in the instant matter. The arbitration provision in question here states as follows:

> I further agree that except for claims for injunctive relief relating to trade secrets, claims brought under the National Labor Relations Act, which are brought before the National Labor Relations Board, and

> claims for medical and disability benefits under the states Worker's Compensation act, I agree that any claim dispute or controversy, which would otherwise require or allow resort to any court or other governmental dispute resolution forum *(including, but not limited to and all claims of discrimination and harassment)*, between myself and the Company (or its owners, directors, and officers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company, whether based on tort contract, statutory, or otherwise shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Uniform Arbitration Act; provided, however, that: In addition to a requirements imposed by law, any arbitrator herein shall be a retired Missouri circuit court judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court.

(Doc. 34, Exs. A, B (emphasis added)). Further, the agreement states that: "Should any *portion, word, clause, phrase*, sentence or paragraph of this Agreement be declared void or unenforceable, such portion shall be considered independent and severable from the remainder, the validity of which shall remain unaffected." (*See id.* (emphasis added)). Plaintiffs would have this Court strike the entire operative language requiring arbitration altogether. (*See* Doc. 37, pp. 12–13). Even assuming that the IWTA operates here to render the language purporting to limit arbitrability of "all claims of discrimination and harassment" as Plaintiff contends is a question this Court need not address here. The severability clause as stated above, to which Plaintiffs agreed, allows this Court to sever the parenthetical information requiring claims of discrimination and harassment to be arbitrated, leaving the rest of the arbitration provision intact and enforceable.

Accordingly, this Court, having applied the proper principles of Illinois law which apply to this Court sitting in diversity, Collins and Auffenberg and Powell and

Auffenberg, respectively, have entered into binding and enforceable contractual agreements to arbitrate. Further, applying the three-part test under the FAA, this Court concludes that there exists an enforceable arbitration provision in the instant action and, accordingly, must stay the action pending arbitration.

## CONCLUSION

For the reasons set forth above, Defendant Auffenberg's Motion to Compel Arbitration (Doc. 34) is **GRANTED**. All claims by Plaintiffs Collins and Powell against Auffenberg are hereby **STAYED** pending arbitration. As such, Defendant Auffenberg's Motion for Relief from Scheduling Order (Doc. 42) is hereby **DENIED as moot**.

**IT IS SO ORDERED.**

**DATED:  March 7, 2025**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
